IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JAQUATE SIMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25CV766 |
| | ) | |
| DET. MAURICE MCPHATTER, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, a federal prisoner convicted in the Eastern District of Virginia following a drug conspiracy investigation that occurred partly in the Middle District of North Carolina, submitted a civil rights action pursuant to 42 U.S.C. § 1983 and Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), together with an application to proceed *in forma pauperis*. It contained allegations related to the investigation that led to his convictions in the Eastern District of Virginia. The Court later entered an Order [Doc. #4] striking that Complaint based on Plaintiff's failure to use the proper forms and allowing him to file a new complaint. The Court also pointed out multiple potential issues with the Complaint that Plaintiff should consider if he chose to make such a filing. Petitioner did file a Corrected Complaint [Doc. #6 and 6-1] and supporting Memorandum [Doc. #7]. Plaintiff also filed an updated Application [Doc. #5] seeking to proceed *in forma pauperis* and a Supplement [Doc. #8] to that Application. In Plaintiff's

Corrected Complaint, he now seeks to sue just two Defendants, Detective Maurice McPhatter and the City of Greensboro, under § 1983. He seeks damages and declaratory relief.

Because Plaintiff is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity," this Court has an obligation to "review" this Complaint. 28 U.S.C. § 1915A(a). "On review, the court shall . . . dismiss the complaint, or any portion of the complaint, if [it] – (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

Applicable here, a plaintiff "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915A(b)(1), when the complaint does not "contain sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[1]

For the reasons that follow, the Corrected Complaint fails to state a claim on which relief may be granted.

The Corrected Complaint alleges that Defendant McPhatter is a detective with the Greensboro Police Department and that the Defendant City of Greensboro is responsible for the policies, training, supervision, and evidence retention of the Greensboro Police Department. (Corrected Complaint [Doc. #6-1] at 2.) It claims that in July of 2017, an agent from the State Bureau of Investigation obtained a tracking device order to allow collection of GPS data from a particular vehicle. (Id. at 4.) The order was only for 45 days and required an inventory return. (Id. at 1.) However, the return was filed "well beyond 45 days." (Id.) In August and November of 2017, unidentified investigators then obtained an order allowing them to collect GPS or cell-site location data from a cellular telephone associated with Plaintiff. (Id. at 4.) The Corrected Complaint alleges that from 2017 until

---

[1]Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 697, respectively)).

sometime in at least 2019, the Greensboro Police Department maintained a record of the GPS data collected pursuant to the tracking orders. (Id. at 3.) However, the Corrected Complaint claims that between 2019 and 2022, "[d]espite notice of materiality of location evidence, GPD/CITY migrated or decommissioned the legacy system without preserving Plaintiff's GPS data, and without implementing a litigation hold or arranging export/vendor retrieval." (Id.) On August 9, 2022, as part of Plaintiff's criminal trial in the Eastern District of Virginia, Plaintiff's defense requested the GPS data associated with the tracking orders. (Id. at 9.) However, in a hearing on August 26, 2022, the Government stated that the GPS data related to the vehicle tracking order had been lost due to the retirement of a legacy computer system, but that all other requested data had been provided to the defense. (Id.) See Case. No. 2:20-cr-00090-JAG-LRL-1 (E.D. Va.) (Doc. #573, Motion to Compel Trans. at 6). Certain cellular telephone data was used during Plaintiff's case in Virginia to place Plaintiff and other participants in the drug conspiracy in the same location at certain times. (Corrected Complaint [Doc. #6-1] at 2.) Plaintiff alleges that the lost GPS tracking data could potentially have been useful in his defense to cross check the telephone data. (Id.) Plaintiff requests nominal and compensatory damages, punitive damages against Defendant McPhatter, and declaratory relief concerning the practices of the City of Greensboro.

Regarding Defendant McPhatter, the Corrected Complaint is devoid of any specific factual allegation against him other than that he is a detective with the Greensboro Police

Department. It contains no allegations connecting him to the warrant that collected the lost GPS data (although it does specifically allege that it was obtained by an officer with an entirely different agency), the collection of that data, the preservation of that data, or the destruction of that data other than to state in conclusory fashion that he failed to preserve the data or caused its destruction. (Corrected Complaint [Doc. #6] § IV(D); [Doc. #6-1 at 9.) It contains absolutely no facts to support that assertion. Therefore, it fails to state any claim against Defendant McPhatter.

As for the City of Greensboro, the Corrected Complaint contains more allegations than against McPhatter, but the allegations still remain insufficient to state any claim for relief. Plaintiff seeks to hold the City of Greensboro liable based on the alleged destruction of potentially exculpatory GPS evidence. In order to do so, he must show that the destruction occurred in bad faith. Arizona v. Youngblood, 488 U.S. 51, 58 (1988) (a showing of bad faith is required to demonstrate a constitutional violation where evidence that is only potentially exculpatory is destroyed). Further, concerning municipal liability under § 1983 for a city employing another defendant,

> "[a] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Department of Soc. Servs., 436 U.S. 658, 691 (1978) (emphasis in original). "Only in cases where the municipality causes the deprivation 'through an official policy or custom' will liability attach." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)). "Because section 1983 was not designed to impose municipal liability under the doctrine of respondeat superior, the 'official policy' requirement was 'intended to distinguish acts of the municipality from acts of employees of

> the municipality, and thereby to make clear that municipal liability is limited to action for which the municipality is actually responsible.'" Riddick v. School Bd. of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986)). "To state a cause of action against a municipality, a section 1983 plaintiff must plead (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." Pettitford v. City of Greensboro, 556 F.Supp.2d 512, 530 (M.D.N.C. 2008).

Roseboro v. Winston-Salem/Forysth County School Board of Education, No. 1:14CV455 2014 WL 5304981, at *4 (M.D.N.C. Oct. 15, 2014) (footnote omitted), recommendation adopted, No. 1:14CV455 (M.D.N.C. Dec. 9, 2014).

The Complaint does attempt to allege bad faith by McPhatter or other employees of the City, but it fails. The first alleged indicator of bad faith listed in the Corrected Complaint is "actual notice of materiality during active litigation and specific requests for original export formats." (Corrected Complaint [Doc. #6-1] at 7.) However, Plaintiff makes no factual allegations demonstrating that Defendant McPhatter or any other employee of the City of Greensboro had any notice of materiality, active litigation, or any request for the data prior to its destruction. The only litigation request mentioned in the Corrected Complaint is Plaintiff's federal criminal proceedings in Virginia where his defense requested the data from the federal government in August of 2022, or approximately five years after the data was collected, only to be told a few days later that the data was gone. The fact that Plaintiff's defense requested the data after it was lost does not somehow show bad faith at the time of the earlier loss.

The next alleged indicator of bad faith is that the decommissioning of the system holding the data occurred without any litigation hold or data escrow or export. (Id.) As an initial matter, it is not clear that this is entirely accurate. All that can be said is that any hold either did not include the data requested by the Plaintiff in August of 2022 or had expired by that time. In any event, the mere lack of any hold without any alleged facts supporting notice to the City that the data should be preserved still does not indicate any sort of bad faith on the part of the City. At most, it might establish mere negligence, which is not sufficient. See California v. Trombetta, 467 U.S. 479, 487-88 (1984) (destruction of evidence in accordance with a party's standard practices does not indicate bad faith); United States v. Thompson, 584 F. App'x 101, 103-04 (4th Cir. 2014) (negligence does not equate to bad faith).

The third claimed sign of bad faith is the allegedly late return of the July 5, 2017 tracking order. (Corrected Complaint [Doc. #6-1] at 7.) This fails for multiple reasons. First, the tracking order, which is in the record of Plaintiff's criminal case in Virginia, did not contain a 45-day limit for any return. It states only that the tracking device was allowed to be active for 45 days and that the authorities were to "execute this order before the time of expiration and [sic] indicated on this application and make due return to the Clerk of the issuing Court." Case. No. 2:20-cr-00090-JAG-LRL-1, (Doc. #359-1, Motion to Suppress, Ex. 1A) (E.D. Va.). The return was made on April 12, 2018. Id. It could be debatable whether or not this is a "due return," but it did not violate any clear limit in the order

because no such limit existed. Second, the order was both procured and returned by an agent of the State Bureau of Investigation. There is no allegation that McPhatter or any employee of the City of Greensboro had any connection to the order, its execution, or its return. Finally, even if the date of the return could be considered "late" in some sense of the term, the return had nothing to do with Defendants or the loss of the GPS data at some later point in time. In the end, the date of the return means nothing as far as showing bad faith related to the failed preservation of the data.

The fourth factor listed is the loss of the GPS data. (Corrected Complaint [Doc. #6-1] at 7-8.) The fact that the data was lost says nothing concerning the circumstances of the loss or whether it occurred as a result of bad faith by the Defendants. Including it in the list of factors supporting bad faith is nonsensical.

Finally, the Corrected Complaint claims "material contradictions in key warrant affidavit assertions that were not corrected at suppression" as the final factor indicting bad faith. (Id. at 7.) This is an apparent reference to an alleged contradiction between a statement in the tracking warrant application that Plaintiff had trafficked 260 kilograms of cocaine in a year and a statement by a witness to federal officers that Plaintiff had only ever received a total of 20 to 25 kilograms. Plaintiff raised this in his criminal case in a motion to reconsider the denial of an earlier motion to suppress GPS evidence. Case. No. 2:20-cr-00090-JAG-LRL-1 (E.D.Va.) (Doc. #467, Request to Reconsider). The court in the Eastern District of Virginia denied the motion for reconsideration on the basis that even

if the issuing judge had known of the witness statement, the difference in the amount of cocaine involved was not material to any finding of probable cause for the tracking order because Plaintiff was a large scale drug dealer in either event. Id. (Doc. #483, Order). Based on this, any contradictions were immaterial, not material as Plaintiff claims and, in any event, are still not linked to Defendants or to anyone connected with failing years later to preserve the data which was collected under the warrant.

In the end, the Corrected Complaint contains no factual allegations sufficient to support any finding of bad faith on the part of Defendants regarding the loss of data. The examples it lists are either not connected to Defendants, not connected to the preservation of data, and/or do not demonstrate bad faith. The Corrected Complaint does not contain facts showing that Defendants or anyone connected to the City realized that the data being lost was potentially exculpatory to Plaintiff at the time it was lost. Therefore, the Corrected Complaint is not sufficient to state any claim based on Youngblood and it should be dismissed. See Yarris v. County of Delaware, 465 F.3d 129, 142-43 (citing Youngblood for the proposition that officers must know of the exculpatory value of evidence at the time of its destruction for a finding of bad faith and then finding bad faith where officers allegedly hid biological evidence in a bag under a detectives desk, allowing it to rot).[1]

---

[2] The Court notes that Plaintiff is free to file a new Complaint, with additional factual allegations if he is able to address these issues, for separate review and screening. However, the Court also notes that Plaintiff raised the same or similar claims in his criminal prosecution, as discussed above. See United States v. Simpson, No. 2:20-cr-00090-JAG-LRL-1 (E.D. Va.). While Plaintiff in the present case states that his "relief is tailored to avoid any challenge to the conviction," (Pl's Mem. at 5), he also contends that the loss of the GPS data impaired his ability to challenge the integrity of the investigation, and that the lost GPS

As a result, Plaintiff's request to proceed *in forma pauperis* should not be countenanced, with the exception that *in forma pauperis* status shall be granted for the sole purpose of entering this Order and Recommendation.

Plaintiff has submitted the Complaint for filing, however, and, notwithstanding the preceding determination, § 1915(b)(1) requires that he make an initial payment of $79.67. Failure to comply with this Order will lead to dismissal of the Complaint.

IT IS THEREFORE ORDERED that *in forma pauperis* status be granted for the sole purpose of entering this Order and Recommendation.

IT IS FURTHER ORDERED that within twenty (20) days from the date of this Order Plaintiff make an initial filing fee payment of $79.67.

IT IS FURTHER ORDERED that Plaintiff's trust officer shall be directed to pay to the Clerk of this Court 20% of all deposits to his account starting with the month of August

---

data would have been material to rebut the prosecution's "heavy reliance" on phone location analytics "to place participants together and to corroborate meetings." (Corrected Compl. at 3, 5). By challenging the evidence presented in his criminal prosecution, Plaintiff's claims here would at least potentially call into question Plaintiff's convictions relying on that evidence. As the Court previously noted in the prior Order in this case, Plaintiff cannot bring a § 1983 suit to challenge or invalidate previous criminal convictions. Heck v. Humphrey, 512 U.S. 477, 486–87 (1994). The application of Heck does not turn simply on the nature of the relief Plaintiff requests, but whether or not his success on his claims "would necessarily demonstrate the invalidity of confinement." Wilkinson v. Dotson, 544 U.S. 74, 82 (2005). Thus, to the extent that his present claims are now attempts to invalidate the convictions using a civil § 1983 suit, the claims could be barred by Heck. See Skinner v. Switzer, 562 U.S. 521 (2011) ("[P]arties asserting Brady violations postconviction generally do seek a judgment qualifying them for immediate or speedier release from imprisonment.... Accordingly, Brady claims have ranked within the traditional core of habeas corpus and outside the province of § 1983.") (internal citations and quotations omitted). Therefore, if Plaintiff chooses to file a new Complaint, he should only assert claims that would not impact the validity of his convictions. The Court can consider that issue further if Plaintiff files a new Complaint with sufficient factual allegations.

of 2026, and thereafter each time that the amount in the account exceeds $10.00 until the $350.00 filing fee has been paid.

IT IS RECOMMENDED that this action be dismissed pursuant to 28 U.S.C. § 1915A for failing to state a claim upon which relief may be granted.

This, the 10th day of August, 2026.

Joi Elizabeth Peake
United States Magistrate Judge